**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |

This document relates to:

*Alexander Jimenez, et al. v. Islamic Republic of Iran*, No. 1:18-cv-11875 (GBD)(SN)
*Gordon Aamoth, Sr., et al. v. Islamic Republic of Iran*, No. 1:18-cv-12276 (GBD)(SN)
*Susan M. King, et al. v. Islamic Republic of Iran*, No. 1:22-cv-05193 (GBD)(SN)

**NON-U.S. NATIONAL PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL JUDGMENT AS TO LIABILITY AND FOR PARTIAL FINAL
JUDGMENT FOR DAMAGES AGAINST THE ISLAMIC REPUBLIC OF IRAN**

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 278-1000
Fax:    (212) 278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        agreene@andersonkill.com

*Attorneys for Plaintiffs*

Dated: New York, New York
        May 20, 2024

# TABLE OF CONTENTS

Page

(1)  PROCEDURAL BACKGROUND .................................................................. 5

    A.  Applicable Orders ............................................................... 5

    B.  Related Cases ..................................................................... 6

    C.  Iran Was Duly Served and Default Was Duly Entered .......................... 8

(2)  THE COURT HAS SUBJECT-MATTER JURISDICTION OVER MOVING
    PLAINTIFFS' CLAIMS AGAINST IRAN UNDER JASTA. ........................... 8

(3)  IRAN IS LIABLE TO MOVING PLAINTIFFS UNDER APPLICABLE
    COMMON LAW. .................................................................... 14

    A.  New York Law Applies ........................................................... 14

    B.  Iran Is Liable to Moving Plaintiffs for Wrongful Death Under New York
        Law. ............................................................................... 15

    C.  Iran Is Liable to Moving Plaintiffs for IIED/Solatium Under New York
        Law. ............................................................................... 17

    D.  Iran Is Liable to Moving Plaintiffs for Plaintiffs' Survival Count Under
        New York Law .................................................................... 19

(4)  The Court Should Enter Damages Awards Against Iran and in Favor of Moving
    Plaintiffs in Amounts Previously Authorized. .................................. 20

    A.  Background ....................................................................... 20

    B.  Solatium Damages ............................................................... 24

    C.  Pain and Suffering Damages for Estates ....................................... 27

    D.  Economic Damages for Estates ................................................ 28

    E.  Punitive Damages ................................................................ 30

    F.  Prejudgment Interest ........................................................... 31

(5)  CONCLUSION ..................................................................... 32

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstead v. National RR Passenger Corp.*,
   954 F. Supp. 111 (1997) ...........................................................................................14

*Ashton v. al Qaeda Islamic Army*,
   02-CV-6977 (GBD)(SN) ................................................................................. *passim*

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   775 F. Supp. 2d 48 (D.D.C. 2011) ..........................................................................31

*Bank of New York v. Yugoimport*,
   745 F.3d 599 (2d Cir. 2014).....................................................................................12

*Barry v. Islamic Republic of Iran*,
   437 F. Supp. 3d 15 (D.D.C. 2020) ..........................................................................18

*Bauer v. Al Qaeda Islamic Army*,
   02-CV-7236 (GBD)(SN) ................................................................................. *passim*

*Belkin v. Islamic Republic of Iran*,
   667 F. Supp. 2d 8 (D.D.C. 2009) ......................................................................18, 24

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
   137 S. Ct. 1312 (2017).............................................................................................9

*Cassirer* v. *Thyssen-Bornemisza Collection Found.*,
   596 U.S. 107 (2022)................................................................................................14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   No. 20-1566, 2022 WL 1177497 (U.S. Apr. 21, 2022) ..........................................12

*Dammarell v. Islamic Republic of Iran*,
   281 F. Supp. 2d 105 (D.D.C. 2003), *vacated on other grounds*, 404 F. Supp.
   2d 261 (D.D.C. 2005) ..............................................................................................24

*Dunefsky v. Montefiore Hosp. Med. Ctr.*,
   162 A.D.2d 300 (1st Dep't 1990) ............................................................................19

*Est. of Bland v. Islamic Republic of Iran*,
   831 F. Supp. 2d 150 (D.D.C. 2011) ........................................................................25

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

*Est. of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006) ................................................................6, 25

*Est. of Hirshfeld v. Islamic Republic of Iran*,
   330 F. Supp. 3d 107 (D.D.C. 2018) ..............................................................18

*Fed. Republic of Germany v. Philipp*,
   141 S. Ct. 703 (2021) ................................................................................9

*Flatow v. Islamic Republic of Iran*,
   999 F. Supp. 1 (D.D.C. 1998) ....................................................................28

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props.,
LLC*,
   435 F.3d 136 (2d Cir. 2006) ......................................................................15

*Estate of Heiser v. Islamic Rep. of Iran*,
   659 F. Supp. 2d 20 (D.D.C. 2009) ..............................................................23

*Heslin v. County of Greene*,
   14 N.Y.3d 67 (2010) ................................................................................19

*Hoglan v. Rafsanjani*,
   759 F. App'x 99 (2d Cir. 2019) .......................................................... *passim*

*Jenco v. Islamic Rep. of Iran*,
   154 F. Supp. 2d 27 (D.D.C. 2001) ..............................................................23

*McKesson Corp. v. Islamic Republic of Iran*,
   672 F.3d 1066 (D.C. Cir. 2012) ..................................................................9

*Neumeier v. Kuehner*,
   31 N.Y.2d 121 (1972) ..............................................................................14

*Owens v. Republic of Sudan*,
   826 F.Supp.2d 128 (D.D.C. 2011) ..............................................................17

*Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*,
   137 A.D.3d 990 (2016) ............................................................................17

*Phillips v. City of Middletown*,
   No. 17-CV-5307 (CS), 2018 WL 4572971 (S.D.N.Y. Sept. 24, 2018) ...................15

iv

## TABLE OF AUTHORITIES
### *(continued)*

Page(s)

*Roth v. Islamic Republic of Iran*,
   78 F. Supp. 3d 379 (D.D.C. 2015) ................................................................28

*In re Sept. 11 Litig.*,
   802 F.3d 314 (2d Cir. 2015) ........................................................................31

*Stethem v. Islamic Republic of Iran*,
   201 F.Supp. 2d 78 (D.D.C. 2002) ...........................................................17, 23

*Surette v. Islamic Rep. of Iran*,
   231 F. Supp. 2d 260 (D.D.C. 2002) ..............................................................24

*Susan M. King, et al. v. Islamic Republic of Iran*,
   No. 1:22-cv-05193 (GBD)(SN) ....................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
   298 F. Supp. 3d 631 (S.D.N.Y. 2018) ...........................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011)
   (ECF No. 2515) ................................................................................. *passim*

*In re Terrorist Attacks on September 11, 2001*,
   03-md-1570 .......................................................................................6, 7, 30

*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) ...........................................................25, 28

**Statutes**

18 U.S.C. § 2333(a) ...........................................................................................22

28 U.S.C. § 1330(a) ...........................................................................................14

28 U.S.C. § 1604 ...............................................................................................10

28 U.S.C. § 1605A .................................................................................... *passim*

28 U.S.C. § 1605B .................................................................................... *passim*

28 U.S.C. § 1606 ...............................................................................................12

28 U.S.C. § 1608(a) ........................................................................................2, 33

49 U.S.C. § 40101 .............................................................................................31

v

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

Air Transportation Safety and System Stabilization Act ("ATSSSA"). Pub. L.
No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101) ....................31

N.Y. Est. Powers & Trusts Law § 5-4.1 .......................................................................................15

N.Y. Est. Powers & Trusts Law § 11-3.2 (b).................................................................................19

**Other Authorities**

Restatement (Second) of Torts § 46 (1965).................................................................................23

vi

## INTRODUCTION

A discrete number of non-U.S. Nationals were murdered during the September 11, 2001 attacks. The undersigned represents citizens from many nations who seek parity with their U.S. National counterparts.  Terrorism does not distinguish based on citizenship nor should this Court. Non-U.S. Nationals killed on 9/11 and their immediate family members who were not U.S. Nationals on 9/11 bring this motion for judgment of default against the Islamic Republic of Iran ("Iran").

For the reasons set forth below, the statements contained in the Declaration of Jerry S. Goldman, Esq., with exhibits appended thereto ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law, as well as those set forth in prior motions for damages made on behalf of other *O'Neill* wrongful death plaintiffs, certain non-U.S. National Plaintiffs in the above-captioned matters who are identified in Exhibit A and Exhibit B[1] (the plaintiffs in Exhibit A and Exhibit B are collectively the "Moving Plaintiffs") (which are Exhibit B and Exhibit C to the Proposed Order) to the Goldman Declaration,[2] by and through their counsel, Anderson Kill P.C., respectfully move this Court for an Order:

---

[1] The plaintiffs listed in Exhibit B are the personal representatives of a 9/11 decedent.  In all cases, they are submitting claims for compensatory damages as a result of the 9/11 decedent's death.  Those personal representatives who, at this time, are seeking to solely recover compensatory damages for pain and suffering are specifically reserving their right to seek an additional judgment, at a future date, for economic damages, based upon then-submitted evidence.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the decedent. Goldman Declaration at ¶¶ 4-14, 20-27.

[2] Exhibit A includes an immediate family member of a 9/11 decedent where the 9/11 decedent was not a U.S. National *and* the immediate family member was also not a U.S. National on September 11, 2001. Exhibit B includes 9/11 decedent estates where the 9/11 decedent was known not to have been a U.S. National on September 11, 2001.

(1)  for the Moving Plaintiff identified in Exhibit A, on behalf of the Moving Plaintiffs, determining that service of process in the above-captioned matters was properly effected upon Defendant Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; AND,

(2) for the Moving Plaintiff identified in Exhibit A, finding that the Court has subject-matter jurisdiction over the common law claims of the Moving Plaintiffs pursuant to 28 U.S.C. § 1605B; AND,

(3) for the Moving Plaintiff identified in Exhibit A, determining that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of wrongful death and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in death and significant grief sustained by family members of those killed in the attacks; AND

(4) for the Moving Plaintiff identified in Exhibit A, entering a judgment as to liability for the Moving Plaintiff identified in Exhibit A, for his common law claims; AND,

(5) for the Moving Plaintiff identified in Exhibit A, finding Iran jointly and severally liable with the Taliban and awarding the Moving Plaintiffs damages judgments against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

(6) awarding intentional infliction of emotional distress (solatium) damages to the Moving Plaintiff identified in Exhibit A in the amounts of $12,500,000 per spouse, $8,500,000

per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in annexed Exhibit A; AND,

(7) on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as set forth in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, as set forth in Exhibit B; AND,

(8) awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in the amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

(9) on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, an award of economic damages in the amount as set forth in Exhibit B; AND,

(10) awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(11) granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

docs-100694245.1

(12)  on behalf of the Moving Plaintiffs, granting permission for all other Plaintiffs in these actions not appearing in Exhibit A and Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(13)  granting to the Moving Plaintiffs such other and further relief as this honorable court deems just and proper.

The Moving Plaintiff identified in Exhibit A seeks a liability determination and default judgment as to his common law claim of intentional infliction of emotional distress (solatium). The Moving Plaintiffs identified in Exhibit B are on a pending motion for judgment as to liability and damages for non-economic damages at ECF No. 9130 (June 15, 2023). All the Moving Plaintiffs seek a damages determination consistent with the determinations of prior subsets of the plaintiffs in the *O'Neill* cases that were granted judgments.

Moving Plaintiffs, like thousands of other similarly situated plaintiffs, request entry of final default judgment against Iran in the amounts indicated in Exhibit A and Exhibit B.

The only material difference between the thousands of Plaintiffs with damages judgments against Iran and Moving Plaintiffs, is that the Moving Plaintiffs were not U.S. Nationals on September 11, 2001. Nonetheless, the Moving Plaintiffs' claims against Iran are fully supported by existing record evidence that should be applied to Moving Plaintiffs' common law claims for wrongful death, intentional infliction of emotional distress, and survival. Thus, this Court should extend its liability determination and enter damages judgments against Iran for Moving Plaintiffs' common law claims in accordance with 28 U.S.C. § 1605B ("JASTA") and applicable common law, as it did for Manu Dhingra at ECF No. 9666 at 8.

4

## DISCUSSION

**(1)    PROCEDURAL BACKGROUND**

### A.    Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by

this Court, and the form of this motion and the relief requested herein are intended to comply

with various Orders of this Court, including the following:

> a.    The Court's January 24, 2017 Order, ECF No. 3435,[3] requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)." For compliance with the required sworn declaration, please see paragraph 11 below.

> b.    The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.

> c.    The Court's October 14, 2016 Order, ECF No. 3362, related to the cases captioned as *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

> d.    The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

> e.    The Court's October 28, 2019 Order, ECF No. 5338, setting forth the scheduling order.

> f.    The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

> g.    The Court's September 22, 2023 Order, ECF No. 9355, setting forth procedures for default judgment motions.

---

[3] All ECF numbers are to the MDL docket unless stated otherwise.

### B.   Related Cases

Relying on evidence and arguments[4] submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th attacks, this Court, on December 22, 2011, and again on August 31, 2015, granted Orders of Judgment on Liability in favor of certain of the *Havlish*, *Ashton*, *O'Neill*, *Federal Insurance*, and *Hoglan* groups of plaintiffs against Iran (*see* ECF Nos. 2516, 3014, 3016, 3020, 3020-23).  Subsequently, other liability findings were made for additional *O'Neill* plaintiffs. After granting *Havlish* plaintiffs' Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the *Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that "Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, …family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |

---

[4] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

6

| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

The Court has applied the same solatium values to claims of other solatium plaintiffs in *Burnett* (ECF Nos. 3666, 4023, 4126, 4146, 4175, 5061, 5062, 5087, 5138, and 5356) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation. *See*, e.g., ECF Nos. 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, and 3977 at 7.

In that same decision in *Havlish*, this Court also found that Plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. ECF No. 2623 at 5.  The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and

Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and *Bauer*. *See* ECF Nos. 3229 at 2; 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6.  The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

On March 26, 2024, this Court extended the Court's prior findings under 28 U.S.C. § 1605A to the common law claims of non-citizens in its decision which awarded Manu Dhingra a judgment at ECF No. 9666.

### C.     Iran Was Duly Served and Default Was Duly Entered.

As set forth in Exhibit A to the Proposed Order, Plaintiffs herein duly served Iran. The Clerk's Office, upon Plaintiffs' applications, issued Clerk's Certificates of Default.

### (2)     THE COURT HAS SUBJECT-MATTER JURISDICTION OVER MOVING PLAINTIFFS' CLAIMS AGAINST IRAN UNDER JASTA.

While the victims of the terrorist attacks on September 11, 2001 were not solely U.S. Nationals, relief under the State Sponsored Terrorism exception to the FSIA is limited to U.S. Nationals or immediate family members (or functional equivalents) of U.S. National decedents. Nevertheless, this Court's jurisdiction reaches the claims of these non-N ationals who were injured or killed, and their family members, by virtue of the fact that the terrorist attacks took

place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in lower Manhattan. The Moving Plaintiff identified on Exhibit A is the immediate family member of a 9/11 decedent where the 9/11 decedent was not a U.S. National and the immediate family member was not a U.S. National on September 11, 2001. Moving Plaintiffs identified on Exhibit B are the Personal Representatives of 9/11 decedent estates where the 9/11 decedent was known not to be a United States National on September 11, 2001.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did.

Moving Plaintiffs' claims against Iran are predicated on the FSIA generally, and more specifically, JASTA. The FSIA "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts' of the United States." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Further, the FSIA is "purely jurisdictional in nature, and creates no cause of action." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012). However, the FSIA "starts with a premise of immunity and then creates exceptions to the general principle." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct.

9

1312, 1321 (2017) (internal quotations omitted) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983)). Thus, a Court is required to find that one of the FSIA's exceptions applies to Iran to establish jurisdiction. *See* 28 U.S.C. § 1604 ("a foreign state shall be immune for the jurisdiction of the courts of the United States…except as provided in sections 1605-1607."). One exception, created in 1996 with the enactment of the Anti-terrorism and Effective Death Penalty Act, 28 U.S.C. § 1605, provides an exception to sovereign immunity when a foreign state has been officially designated as a state sponsor of terror by the United States.  Iran was designated a state sponsor of terrorism on January 19, 1984, and has remained a designee since. This Court has found jurisdiction over Iran and entered numerous default judgments in this case pursuant to that exception to the FSIA.

The Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, now codified at 28 U.S.C. § 1605B ("JASTA"), confers jurisdiction to this Court to award damages to the estates of non-U.S. National decedents and non-U.S. national family members of those decedents. JASTA includes no requirement that common law claims can only be maintained by U.S. Nationals. In fact, JASTA simply states that "a foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by: 1) an act of international terrorism **in the United States;** and 2) **a tortious act or acts** of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred." *See* § 1605B(b) (emphasis added). Clearly, Congress intended that the only requirements to maintain common law claims against a foreign sovereign under JASTA are

10

that the attack *occurred in the United States* and that the foreign state committed a tort. These jurisdictional requirements are easily met here for the same reasons the Court previously found jurisdiction over Iran under 28 U.S.C. § 1605A: Namely, that "Plaintiffs have established by evidence satisfactory to the Court that the Islamic Republic of Iran provided material support and resources to al Qaeda for acts of terrorism, including the extrajudicial killing of the victims of the September 11, 2001 attacks" in "the World Trade Center, the Pentagon, and Washington, D.C. (Shanksville, Pennsylvania)." *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *39-40 (S.D.N.Y. Dec. 22, 2011) (conclusions of law ¶¶ 18, 19, 23) (ECF No. 2515).

Plaintiffs also previously proved, and the Court previously found "a tortious act or acts of [Iran], or of any official, employee, or agent of [Iran]". For example, the Court found:

> [T]he Islamic Republic of Iran provided material support or resources . . . to al Qaeda generally. Such material support or resources took the form of, inter alia, planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation. Beyond the evidence that the Islamic Republic of Iran provided general material support or resources to al Qaeda, plaintiffs have established that Iran provided direct support to al Qaeda specifically for the attacks on the World Trade Center, the Pentagon, and Washington, DC (Shanksville, Pennsylvania), on September 11, 2001. Such material support or resources took the form of, inter alia, planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation. Such provision of material support or resources by various Iranian officials, including, but not limited to, Iran's Supreme Leader the Ayatollah Ali Khamenei and his subordinates, by officers of the IRGC/Qods Force, by the MOIS, and by the intelligence apparatus of the Supreme Leader, was engaged in by Iranian officials, employees, or agents of Iran

11

while acting within the scope of his or her office, employment, or
agency.

*See, generally, id*. at ¶¶ 18-35.

Plaintiffs here have clearly shown and the Court has already found "a tortious act or acts
of" Iran and an act of international terrorism in the United States for purposes of finding subject-
matter jurisdiction under JASTA.

Importantly, § 1605B acts as a pass through for state law claims.[5]  This Court so-held in
rejecting the Motion to Dismiss filed by the Republic of the Sudan. *See* ECF No. 7942 at 34
("Nothing in § 1605B(b)'s text suggests that the jurisdictional grant is limited to 'U.S.
nationals'—the phrase does not even appear in the subsection."); *see also id.* at 53-54 (rejecting
argument that 1605B is not a "gateway," holding that "Plaintiffs' state law claims are not
preempted."). Moving Plaintiffs assert common law claims for wrongful death, intentional
infliction of emotional distress, and survival that this Court has jurisdiction to hear.

This Court recently granted a liability and damages judgment to Manu Dhingra, a non-
U.S. N ational (at the time of 9/11) personal injury plaintiff in *Susan M. King, et al. v. Islamic
Republic of Iran*, No. 1:22-cv-05193 (GBD)(SN) who sustained personal injuries in the
September 11, 2001 terrorist attacks. *See* ECF No. 9666. Magistrate Judge Netburn provided the

---

[5] *See Bank of New York v. Yugoimport*, 745 F.3d 599, 609 n.8 (2d Cir. 2014) ("The FSIA operates as a
pass-through, granting federal courts jurisdiction over otherwise ordinary actions brought against foreign
states. It provides foreign states and their instrumentalities access to federal courts only to ensure uniform
application of the doctrine of sovereign immunity.'); *id.* ("The FSIA contains no express choice of law
provision, but Section 1606 provides that a foreign sovereign 'shall be liable in the same manner and to
the same extent as a private individual under like circumstances.' 28 U.S.C. § 1606."); *Cassirer v.
Thyssen-Bornemisza Collection Found*., No. 20-1566, 2022 WL 1177497, at *4 (U.S. Apr. 21, 2022)
("Section 1606 directs a 'pass-through' to the substantive law that would govern a similar suit between
private individuals. . . . The provision thus ensures that a foreign state, if found ineligible for immunity,
must answer for its conduct just as any other actor would.")

following recommendation to the District Court (adopted in full at ECF No. 9666) that 28 U.S.C.

§ 1605B(b)'s requirements were satisfied (to provide the Court with subject-matter jurisdiction:

> [The victims'] claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. [They are] seeking "money damages" from Iran. [28 U.S.C. § 1605B(b)"; *see* No. 15-cv-09903, ECF No. 53 at 1082-88 (*Burnett* complaint [at issue in this motion]). Those damages are for "physical injur[ies]" [they] sustained "in the United States." 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv- 09903, ECF No. 53 at 1081. [Their] injuries were "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); *see* No. 15-cv-09903, ECF No. 53 at 1081.
>
> One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries.
> The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was 'aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. *In re 9/11*, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. *Id.* at *41; *see* ECF No. 9154-7; *cf.* ECF No. 9274 at 3 (concluding that Iran proximately caused latent injuries). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that Iran's "tortious act[s]" "caused" [plaintiffs'] injuries. *See* ECF Nos. 2431, 2432, 2433, 2473.

*See* ECF No. 9506 at 6-7. Magistrate Judge Netburn correctly held that the jurisdictional

threshold for establishing subject-matter jurisdiction over the Iran Defendants was met under 28

U.S.C. § 1605B(b), and that the Court should exercise subject-matter jurisdiction. Magistrate

Judge Netburn's entire Report & Recommendation was subsequently adopted by the Court. *See, generally,* ECF No. 9666; *id.* at 4 ("Therefore, Plaintiff has established the applicability of the

FSIA exception set forth in 28 U.S.C. § 1605B(b), and this Court has subject-matter jurisdiction

under 28 U.S.C. § 1330(a).”). Accordingly, this Court has subject-matter jurisdiction over the Moving Plaintiffs' claims under 28 U.S.C. § 1330(a).

**(3)     IRAN IS LIABLE TO MOVING PLAINTIFFS UNDER APPLICABLE COMMON LAW.**

Moving Plaintiffs seek a determination that Iran is liable to non-U.S. National Plaintiffs based on the same record evidence, and findings of fact and conclusions of law already made by the Court and seek an extension of liability judgments rendered under Section 1605A to these plaintiffs' wrongful death, intentional infliction of emotional distress, and survival common law claims, as the Court previously determined for Manu Dhingra at ECF No. 9666. As discussed below, New York law applies to the Moving Plaintiffs' claims because all the 9/11 decedents related to the Moving Plaintiffs died in New York. As this Court correctly held:

> Once a foreign state is shed of its presumptive immunity under the FSIA, “it is subject to the same rules of liability as a private party. ... [A] foreign state, if found ineligible for immunity, must answer for its conduct just as any actor would.” *Cassirer* v. *Thyssen-Bornemisza Collection Found.,* 596 U.S. 107, 114 (2022). “[T]he FSIA was never ‘intended to affect the substantive law determining the liability of a foreign state or instrumentality’ deemed amenable to suit.” *Id.* at 113-14 (quoting *First Nat'I City Bank* v. *Banco Para El Comercio Exterior De Cuba,* 462 U.S. 611, 620 (1983)). Thus, Magistrate Judge Netburn did not err in determining that Iran is subject to suit for state tort claims, including assault and battery. *(See* Report at 10.)

ECF No. 9666 at 5. Accordingly, as set forth below, Iran is liable to Moving Plaintiffs for common law wrongful death, intentional infliction of emotional distress, and survival claims.

**A.     New York Law Applies**

Federal courts must apply the choice of law rules of the state in which they sit, which in this case is New York. *Armstead v. National RR Passenger Corp.*, 954 F. Supp. 111, 112 (1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Here, under New York conflicts law, the law of the place of injury would apply. *See Neumeier v. Kuehner*, 31 N.Y.2d

14

121, 128 (1972) (If law is "conduct regulating" apply law of place of injury. If law is "loss-allocating" and plaintiff and defendants do not reside in same domicile, which is the case here, generally use place of injury); *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 137 (2d Cir. 2006). ("Given that wrongful death and survival actions relate to loss allocation, . . . and that the parties are domiciled in a number of different states, the presumption is that New York's rules apply."). Here, New York common law applies because all the 9/11 decedents related to the Moving Plaintiffs died in New York.

**B.    Iran Is Liable to Moving Plaintiffs for Wrongful Death Under New York Law.**

Moving Plaintiffs properly assert a wrongful death claim under New York law since they can establish (1) a wrongful act, neglect or default (2) which caused the decedent's death. N.Y. Est. Powers & Trusts Law § 5-4.1. Further, the Moving Plaintiffs have proper standing to bring a wrongful death claim under New York law, since they are the personal representative of a 9/11 decedent and were duly appointed in this state or any other jurisdiction. *Id.*

The Moving Plaintiffs' wrongful death claims brought under New York law are derivative of assault and battery claims. *Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2018 WL 4572971, at *11 (S.D.N.Y. Sept. 24, 2018). And as discussed herein, this Court found Iran liable to Manu Dhingra for assault and battery. ECF No. 9666 at 8.

This Court previously found that Iran's "provision of material support or resources" to al Qaeda in connection with the 9/11 Attacks caused the extrajudicial killings of plaintiffs. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011), ECF No. 2515 (conclusions of law ¶¶ 18-35); *see also id.* at ¶ 28 ("The IRGC has a special foreign division, known as the *Qods* (or *Quds* or "Jerusalem") Force, which is the arm of

the IRGC that works with militant organizations abroad and promotes terrorism overseas."); *id.* at ¶ 29 ("For more than two decades, the IRGC has provided funding and/or training for terrorism operations targeting American citizens, including support for [ ] al Qaeda. In doing so, the IRGC is acting as an official agency whose activities are controlled by the Supreme Leader. [ ].  Terrorism training provided to [ ] al Qaeda by the IRGC is an official policy of the Iranian government."); *id.* at ¶ 30 ("The U.S. Treasury Department has designated the *IRGC-Qods* Force as a "terrorist organization" for providing material support to the Taliban and other terrorist organizations, and the U.S. State Department has designated the IRGC as a "foreign terrorist organization."); *id.* at ¶ 34 ("Many of the U.S. State Department reports on global terrorism over the past twenty-five (25) years refer to [Iran's Ministry of Information and Security ("MOIS")] as Iran's key facilitator and director of terrorist attacks."); *id.* at ¶ 40 ("Iranian government ministries are responsible for carrying out the policies of the Iranian government, and the Iranian government's policies include state support for terrorism. Although much of that state support is done through clandestine means, the government ministries have also been involved in state support for terrorism, generally, and in support for al Qaeda [ ], in particular."); *id.* at ¶ 77 ("In 1991 or 1992, discussions in Sudan between al Qaeda and Iranian operatives led to an informal agreement to cooperate in providing support for actions carried out primarily against Israel and the United States."); *id.* at ¶ 78 ("Thereafter, senior al Qaeda operatives and trainers traveled to Iran to receive training in explosives. Osama bin Laden also sent senior aides to Iran for training with the IRG [ ]."). The Court should extend these factual findings to Moving Plaintiffs here by finding that the 9/11 decedents referenced in Exhibit B (1) died during the 9/11 attacks and (2) that their deaths were caused by a wrongful act of Iran. (These findings also rise above the level of mere negligence).

16

Accordingly, this Court should find Iran liable to Moving Plaintiffs for their wrongful death claims.

## C.     Iran Is Liable to Moving Plaintiffs for IIED/Solatium Under New York Law.

Moving Plaintiffs properly assert intentional infliction of emotional distress (solatium) ("IIED) claims under New York law since they can establish (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs*., 137 A.D.3d 990 (2016).

Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress. *Stethem v. Islamic Republic of Iran*, 201 F.Supp. 2d 78, 89 (D.D.C. 2002). Plaintiffs have clearly met the requisite elements of IIED under New York's common law. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011) (*see*, *supra* at 25-26) (ECF No. 2515). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50. Further, this Court also found that "plaintiffs have established that the 9/11 attacks were caused by Defendants' [including Iran's] provision of material support to al Qaeda," *id.* at 52, and met the solatium requirements under 1605A©. *Id.* at 53. Specifically, this Court found Iran liable for providing wide-ranging material support for al Qaeda in connection with the 9/11 Attacks. Under the above-referenced black letter law, this conduct clearly is "outrageous" and "extreme," clearly disregarded "a substantial probability of causing, severe emotional distress" and caused resulting emotional distress. While this Court previously found Iran liable under Section 1605A and therefore "an analysis of liability under state law [wa]s unnecessary", *id.* at n.9, this Court then cited *Owens v. Republic of*

17

*Sudan*, 826 F.Supp.2d 128 (D.D.C. 2011), a case which found Sudan liable under state common law for similar facilitating conduct. In a subsequent decision less than a year later, this Court then entered judgments against non-sovereign defendants under state common law traditional tort principles, for similar facilitating conduct Iran was found to have committed. *See* ECF No. 2618 at 14. The Court should similarly extend its prior 1605A judgments against Iran based on identical state common law considerations.

Moving Plaintiffs here have valid solatium claims vis-à-vis their common law IIED claims. Regarding solatium claims, "courts in this Circuit have found IIED and solatium claims to be 'indistinguishable.'" *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15 (D.D.C. 2020). In fact, solatium claims and IIED are so "closely connected" plaintiffs cannot recover under both theories simultaneously, presumably because that would be duplicative. *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In recent FSIA cases, IIED and solatium have been concurrently analyzed as IIED is "recognized as giving rise to liability under the FSIA." *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018). Further, the "standard for an IIED claim in a 1605A© case draws heavily upon principles set forth in the Restatement (Second) of Torts." *Id.* In other words, the solatium provision of 1605A precisely mirrors IIED. Courts have even gone so far as to rely on "the discussion of common law intentional infliction of emotional distress…to determine which classes of family members may recover solatium damages in an FSIA terrorism case." *Hoglan v. Rafsanjani*, 759 F. App'x 99, 105 (2d Cir. 2019). Because Moving Plaintiffs' IIED claims are indistinguishable from solatium claims as provided under 1605A, recovery for Moving Plaintiffs listed in Exhibit A and B here should also be identical to the solatium damages framework, set forth below, that has

18

been entered numerous times in this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiff

spouses, children, parents, and siblings common law tort damages against non-sovereign

defendants in same amounts as § 1605A claims against Iran "under traditional tort principles"

even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these

defendants and Section 1605A claims were inapplicable as to these non-sovereign defendants).

Accordingly, this Court should find Iran liable to Moving Plaintiffs for their

IIED/solatium claims.

### D.     Iran Is Liable to Moving Plaintiffs for Plaintiffs' Survival Count Under New York Law.

New York has the following survival statute:

| Survival Statute | |
|---|---|
| New York[6]: | No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent. |

Under New York law, "a personal injury action on behalf of the deceased under EPTL

11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages

awarded accrue to the estate." *Heslin v. County of Greene*, 14 N.Y.3d 67, 76-77 (2010). Courts

have held that a survival action (or an action for conscious pain and suffering) is separate and

distinct from a wrongful death cause of action. *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162

A.D.2d 300 (1st Dep't 1990). Here, Iran's actions caused the deceased victims identified in

Exhibit A and Exhibit B severe and intense harmful bodily contact, personal injury, and battery

prior to their deaths, as described in the *Burnett* complaint that has been incorporated by

---

[6] N.Y. Est. Powers & Trusts Law § 11-3.2 (b).

reference into Moving Plaintiffs' short form complaints against Iran. *See* Complaint, 15-cv-09903, ECF No. 53, dated Feb. 8, 2016, at ¶¶ 5067-5070 (incorporated by reference into short form complaints). As a result of Iran's tortious conduct, *see In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011) (*see*, *supra* at 25-26) (ECF No. 2515), Moving Plaintiffs in Exhibit A and Exhibit B are entitled to survival damages for those injured and killed on September 11, 2001. *See* ECF No. 9666 (awarding Manu Dhingra a damages judgment for assault and battery).

**(4)   THE COURT SHOULD ENTER DAMAGES AWARDS AGAINST IRAN AND IN FAVOR OF MOVING PLAINTIFFS IN AMOUNTS PREVIOUSLY AUTHORIZED.**

**A.   Background**

Plaintiffs now respectfully request that this Court grant them a Judgment awarding them (1) solatium (IIED) damages for the plaintiff on Exhibit A for the losses she suffered as the immediate family member (in this instance, spouses, parents, children, and siblings, or the estate of a spouse, parent, child, or sibling) of a 9/11 decedents (as indicated in Exhibit A to the Goldman Declaration) in the same per plaintiff amounts previously awarded by this Court to various similarly situated plaintiffs; (2) compensatory damages for the plaintiffs on Exhibit B for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the terrorist attacks on September 11, 2001; (3) economic damages for the plaintiffs so designated on Exhibit B as set forth in the expert report attached as Exhibit D to the Goldman Declaration; (4) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (5) permission for plaintiffs identified in Exhibit A or Exhibit B to seek punitive damages, economic damages, or other damages at a later date; and (6) for all other Plaintiffs not

20

appearing on Exhibit A or Exhibit B, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Plaintiff identified in Exhibit A is an immediate family member of someone killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent.[7] *See* Goldman Declaration at ¶¶ 4-14, 18-19.

Plaintiffs identified in Exhibit B are comprised of the estates of victims who perished on 9/11, in claims asserted by their personal representatives, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's Court, Probate Court, Orphan's Court, and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-14, 20-27.

With respect to each estate plaintiff (in Exhibit B), the personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative and/or 9/11 decedent estate. This Court should adopt and apply the damages procedure for non-U.S. National Plaintiffs' § 1605B claims that has been applied numerous times in this case to actions maintained under § 1605A. The Court previously adopted the same damages rubric form personal injury claims when it granted judgment in favor of Manu Dhingra. It would not make sense to apply the same damages rubric for a personal injury claim but not for solatium or death claims. Equity dictates that non-U.S. National Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran

---

[7] Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF No. 4045.

"under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism

Act claims against these defendants and Section 1605A claims were inapplicable as to these

defendants).

In an October 12, 2016 Report and Recommendation issued by Magistrate Judge Netburn

(and adopted by Judge Daniels), while addressing the appropriate rate of prejudgment interest,

the Court provided a discussion of "common law wrongful death actions" in New York and

stating that only pecuniary damages—like those sought for the estates of 9/11-decedent estates in

this case under both the Anti-Terrorism Act, 18 U.S.C. § 2333(a), and FSIA—are to be awarded

in a wrongful-death action in New York which "does not permit recovery for, inter alia, the grief

of survivors, the loss of their decedent's love, companionship and society, or loss of

consortium." ECF No. 3358 at 18. But in the same Report and Recommendation, this Court held,

"[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism, courts have held

that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims of intentional

infliction of emotional distress." ECF No. 3358 at 8 (citing *Surette v. Islamic Rep. of Iran*, 231 F.

Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting *Wagner v. Islamic Rep. of Iran*, 172 F. Supp. 2d

128, 135 n.11 (D.D.C. 2001)). Specific to the terrorist attacks on September 11, 2001, the Court

continued:

> Terrorist attacks, by their very nature, are meant to inflict severe
> emotional distress upon society as a whole, but the loved ones of
> their victims bear a burden which is unquestionably heavier. As the
> September 11 attacks have left deep scars in the consciousness of
> this city and this nation, family members of the decedents are left
> with constant and stark reminders of their tragic losses.

*Id.* This Court has held that "the common law of intentional infliction of emotional distress

governs questions of who is entitled to recover damages…. This is necessarily so because of the

22

'interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]' and the fact that generally accepted legal standards of the states provide the only steady foundation for the rules of decision." ECF No. 3363 at 2 (emphasis added) (quoting *Estate of Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). In fact, the courts addressing solatium damages have relied on the Restatement (Second) of Torts § 46 (1965), which is the precise source of New York law. *Id.* at 3. While physical proximity to the incident giving rise to the emotional distress is typically a required element of international infliction of emotional distress claims, "courts have uniformly held that a terrorist attack—by its nature—is directed not *only at the victims but also at the victims' families.*" *Id. (*quoting *Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)); *Jenco v. Islamic Rep. of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001). Acts of terrorism are, by their very definition, extreme and outrageous and intended to cause the highest degree of emotional distress. *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50. As these Plaintiffs' intentional infliction of emotional distress claims mirror those of the solatium claims actionable under 1605A for U.S. National plaintiffs in claims arising from the same nexus of events, the Plaintiffs' recovery here under the common law should be identical to the solatium damages framework established by this Court against Iran and applied to the claims under 1605A. In the FSIA context, this Court has emphasized the "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]," but the Court's citation to *Estate of Heiser* goes on to explain that this uniformity is achieved through "well-established standards of state common law." *See* ECF No. 3363 at 2

23

(quoting *Estate of Heiser*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). Such uniformity in outcome between plaintiffs who sustained injury arising from the same terrorist attacks should be simple given the application of "well-established standards of state common law" which is the undergirding of the claims of Moving Plaintiffs who lack standing to assert claims under the 1605A.

Accordingly, while JASTA confers jurisdiction, the appropriate damages framework for Moving Plaintiffs' common law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below and as the Court previously applied in the Manu Dhingra personal injury judgment. ECF No. 9666 at 9.

**B.    Solatium Damages**

As set forth above, the FSIA specifically provides for an award of solatium damages. Under § 1605A, family members of a decedent may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for the intentional infliction of emotional distress.  *See, e.g.*, *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of

24

emotional distress" (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001))).

When previously awarding solatium damages in other cases related to the 9/11 attacks, such as those noted above, this Court looked at the framework established by District Court Judge Royce C. Lamberth in *Heiser*, 466 F. Supp. 2d at 229, where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id.*  This formula, however, may be adjusted upward or downward when circumstances warrant.  *See, e.g.*, *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lamberth's framework in *Heiser* was appropriate because the decedents' immediate family members suffered, and continue to suffer "profound agony and grief" and "[w]orse yet, …are faced with frequent reminders of the events of that day."  ECF No. 2618 at 10-12.  Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families . . ."  *Id.* at 11.  In that Report and Recommendation, with which this Court later agreed,

25

Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the 9/11 attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, ECF No. 2623, and were replicated in this Court's June 16, 2016 Order relating to the claims of certain of the *Ashton* Plaintiffs, ECF No. 3300, in the September 12, 2016 Order pertaining to plaintiffs in *Bauer*, ECF No. 3341, in the October 14, 2016 Report and Recommendation, ECF No. 3363, and in the October 31, 2016 Order in *Hoglan*, ECF No. 3384. These amounts were, again, adopted by this Court in its April 24, 2018 Order relating to the claims of additional *Ashton* plaintiffs, ECF No. 3977 at 6–7. The same amounts were recently adopted in the Court's June 8, 2018 (Corrected) Order of Partial Final Default Judgment in the matter known as "*Burnett/Iran II*,"[8] No. 15-cv-09903, ECF No. 101.

In addressing Manu Dhingra's claim for pain and suffering damages under New York law for assault and battery, this Court held that "considerations of fairness dictate that the preexisting personal injury damages framework applies to non-U.S. nationals as well." ECF No.

---

[8] The same values were applied to the claims of other plaintiffs in the earlier *Burnett* case in this Court's order of July 31, 2017. ECF No. 3666.

9666 at 9. Since, the solatium losses suffered by the Plaintiffs in Exhibit A are legally and factually comparable to those suffered by the U.S. national plaintiffs in *Havlish*, *Ashton*, *Bauer*, *Hoglan*, *O'Neill*, and *Burnett*, the same considerations of fairness dictate that the Court grant an award of solatium in the same amounts indicated herein, consistent with this Court's application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan, O'Neill*, and *Burnett* cases.

### C.    Pain and Suffering Damages for Estates

As noted above, the plaintiffs identified in Exhibit B include the personal representatives of the estates of individuals who were killed in the 9/11 Attacks.[9] This Court previously assessed the entitlement and value of pain and suffering awards to estates for their decedents' deaths in this litigation. ECF No. 2618 at 7-9. For the fairness considerations underpinning the Court's decision to award Manu Dhingra a judgment amount based on "the preexisting personal injury damages framework applies to non-U.S. nationals as well," ECF No. 9666 at 9, the same fairness considerations dictate that the $2 million judgments awarded to U.S. national 9/11 decedent estates for conscious pain and suffering damages should apply equally to the non-U.S. national 9/11 decedent estates herein.  Accordingly, the above stated estates as set forth in Exhibit B respectfully request that the Court grant awards for the decedent's pain and suffering in the

---

[9] Some estates in Exhibit B only seek pain and suffering damages and other estates seek both pain and suffering damages and economic damages.

amount of Two Million Dollars ($2,000,000) per estate. *See Id.* at 9; ECF No. 2624 at 1, 3-4

(Judge Daniels awarding $2,000,000 per estate).  *See* Goldman Declaration at ¶ 20.

### D.    Economic Damages for Estates

The FSIA specifically provides for economic damages. *See* 28 U.S.C. § 1605A(c).  The

economic damages provision is "designed to compensate [a] decedent's heirs-at-law for

economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic*

*of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's

estate [are]…entitled to recover the present value of economic damages, including lost wages

that the decedents might reasonably have been expected to earn but for their wrongful deaths."

*Valore*, 700 F. Supp. 2d at 81-82 (D.D.C. 2010), citing *Heiser*, 466 F.Supp.2d at 229.  Thus, for

example, United States District Court Judge Royce C. Lamberth, in a series of decisions issuing

final judgments Iran under the FSIA, has held Iran "liable for the economic damages caused to

decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C.

2015), quoting *Valore*, 700 F.Supp.2d at 78.[10]

Previously, this Court awarded economic damages in prior Iran cases for the "economic

losses stemming from the wrongful death of the decedent[.]" *See* ECF No. 2623 at 2-3. In doing

so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

Certain of the Estates set forth in Exhibit B and as specifically identified and set forth

therein, and which provided economic expert reports, transmitted to the Court in the Goldman

---

[10] In adopting this estate-accumulations calculation, Judge Lamberth recognized that case law under the
FSIA was "develop[ing]…a federal standard" and looked to the law of the District of Columbia, which it
concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of
accretions to the decedent's estate. *Valore*, 700 F.Supp. 2d at 82.

Declaration, seek economic damages, similar to the plaintiffs in the prior Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration at ¶¶ 21-27.

As described at length in the Goldman Declaration, in these cases, plaintiffs retained the services of an expert, John F. Beauzile, who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedent's death as a result of the 9/11 attacks.  Goldman Declaration at ¶¶ 24-26.

As described in more detail in the Goldman Declaration, and the Expert's Declaration (which is Exhibit D to the Goldman Declaration), we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a substantial number of the *O'Neill* plaintiffs.[11]  Those files, along with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work papers and distribution plans, VCF determinations, underlying economic documents, and the like.  Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared up-to-date economic loss expert reports, copies of which are deemed appended to the Expert's Declaration (Exhibit D) and being filed on ECF with access restricted to the Court pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports ("Expert Reports") in support of default judgments.

---

[11] We are still awaiting receipt of additional files which has adversely become impacted by both "normal" delays in receiving responses to FOIA requests and COVID.

Based on the foregoing, the Moving Plaintiffs respectfully ask that this Court award economic damages to the estates set forth in Exhibit B in the amounts stated therein, as supported by the Expert Reports.

### E.    Punitive Damages

Moving Plaintiffs are also entitled to punitive damages under the FSIA. 28 U.S.C. § 1605A(c)(4). In the *Havlish* Report and Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." ECF No. 2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2. The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address

30

the issue of punitive damages at a later date.  *See*, e.g., ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

**F.    Prejudgment Interest**

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343

(2d Cir. 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id.*  Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29.  Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims.  ECF No. 3384 at 6.  Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

The Court applied these decisions and awarded prejudgment interest of 4.96 per annum, compounded annually to Manu Dhingra as well in the non-citizen judgment. ECF No. 9666 at 10.

In light of the Court's decisions in *Hoglan*, *Burnett*, and the Manu Dhingra judgment, applying the 4.96 percent rate to prejudgment interest, the Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

**(5)  CONCLUSION**

For all of the reasons herein, in the Goldman Declaration, and in the papers previously submitted to this Court in support of damages against Iran in this MDL, Moving Plaintiffs respectfully request that this Honorable Court enter an Order:

(1)      for the Moving Plaintiff identified in Exhibit A, on behalf of the Moving Plaintiffs, determining that service of process in the above-captioned matters was properly effected upon Defendant Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; AND,

(2)      for the Moving Plaintiff identified in Exhibit A, finding that the Court has subject-matter jurisdiction over the common law claims of the Moving Plaintiffs pursuant to 28 U.S.C. § 1605B; AND,

(3)      for the Moving Plaintiff identified in Exhibit A, determining that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of wrongful death and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in death and significant grief sustained by family members of those killed in the attacks; AND

(4)      for the Moving Plaintiff identified in Exhibit A, entering a judgment as to liability for the Moving Plaintiff identified in Exhibit A, for his common law claims; AND,

(5)      for the Moving Plaintiff identified in Exhibit A, finding Iran jointly and severally liable with the Taliban and awarding the Moving Plaintiffs damages judgments against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

(6)      awarding intentional infliction of emotional distress (solatium) damages to the Moving Plaintiff identified in Exhibit A in the amounts of $12,500,000 per spouse,

33

$8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in annexed Exhibit A; AND,

(7)     on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as set forth in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, as set forth in Exhibit B; AND,

(8)     awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in the amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

(9)     on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit B, an award of economic damages in the amount as set forth in Exhibit B; AND,

(10)     awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(11)     granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(12)     on behalf of the Moving Plaintiffs, granting permission for all other Plaintiffs in these actions not appearing in Exhibit A and Exhibit B to submit applications

34

for damages awards in later stages, to the extent such awards have not previously been

addressed; AND,

(13)   granting to the Moving Plaintiffs such other and further relief as this

honorable court deems just and proper.

Dated:   New York, New York          Respectfully submitted,
         May 20, 2024

                                     /s/ Jerry S. Goldman
                                     ANDERSON KILL P.C.
                                     Jerry S. Goldman, Esq.
                                     Bruce E. Strong, Esq.
                                     Alexander Greene, Esq.
                                     1251 Avenue of the Americas
                                     New York, NY 10020
                                     Tel:  (212) 279-1000
                                     Fax: (212) 278-1733
                                     Email:  jgoldman@andersonkill.com
                                             bstrong@andersonkill.com
                                             agreene@andersonkill.com
                                     *Attorneys for Plaintiffs*

35

docs-100694245.1